IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
SHAWN WRIGHT,              ⋮  HONORABLE JEROME B. SIMANDLE
                          ⋮
              Plaintiff,  ⋮  Civil No. 07-3725 (JBS)
        v.                ⋮
                          ⋮  OPINION
CALVIN EVANS, et al.,     ⋮
                          ⋮
              Defendants. ⋮
```

APPEARANCES:

William B. Hildebrand, Esq.
LAW OFFICES OF WILLIAM B. HILDEBRAND, L.L.C.
1040 North Kings Highway
Suite 601
Cherry Hill, NJ 08034
     Attorney for Plaintiff

Ralph J. Marra, Esq.
ACTING UNITED STATES ATTORNEY
     By:  Karen H. Shelton
          Assistant United States Attorney
402 East State Street
Trenton, NJ 08608
     Attorney for Defendants Calvin Evans and John Doe,
     supervisor to Calvin Evans.

John C. Connell, Esq. and John Patrick Kahn, Esq.
ARCHER & GREINER P.C.
One Centennial Square
Haddonfield, NJ 08033
     Attorneys for Defendants Salem County Prosecutors Office,
          John Lenehan, Jason Witcher, and Ralph Padilla

James R. Birchmeier, Esq.
POWELL, BIRCHMEIER & POWELL, ESQS.
1891 State Highway 50
P.O. Box 582
Tuckahoe, NJ 08250
     Attorney for Defendant Edmund Spinelli

**SIMANDLE**, District Judge:

This suit arises from the confidential informant relationships between Plaintiff and federal and county law enforcement agencies.  This matter is before the Court on three motions.  Defendant Calvin Evans ("Agent Evans"), an Agent with the United States Drug Enforcement Agency ("DEA"), has filed a motion to dismiss the complaint filed by Plaintiff Shawn Wright ("Plaintiff" or "Mr. Wright") for failure to state a claim upon which relief may be granted [Docket Item No. 27].  Defendants Salem County Prosecutor's Office ("SCPO"), Prosecutor John Lenehan ("Mr. Lenehan"), Assistant Prosecutor Jason Witcher ("Mr. Witcher") and Officer Ralph Padilla ("Officer Padilla") and Defendant Special Officer Edmund Spinelli ("Officer Spinelli") (collectively "the Salem County Defendants") have filed identical motions [Docket Item Nos. 31, 33].

Plaintiff has brought suit against Agent Evans and John Doe ("Mr. Doe"), whom he identifies simply as "[s]upervisor to [Drug Enforcement Agency] Agent Calvin Evans," (Compl. at ¶ 2b) (collectively "the Federal Defendants") under the authority of Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), for a violation of his constitutional rights by federal agents or employees.  He has further brought suit against the Salem County Defendants under 42 U.S.C. § 1983 for a violation of his constitutional rights by state actors.

Mr. Wright has also alleged a breach of his written Confidential Informant Agreement by Agent Evans.  (Compl. ¶ 4.) Plaintiff has claimed that the conduct of the investigation by

and the lack of oversight of the SCPO by Agent Evans violated the plea agreement entered into by Plaintiff and the United States Attorney's Office.  (Id.)  Mr. Wright has alleged a breach by the SCPO of an oral contract between the parties that was entered into on three different occasions. (Id. ¶ 5.)  Finally, Plaintiff alleges common law tort claims against the DEA and the SCPO for a conspiracy to bring him harm.  (Id. ¶ 14.)

The Court, for reasons discussed below, will now grant the defendants' motions in full.

## I.   BACKGROUND

### A.   Claims Against All Defendants

According to his Complaint, Mr. Wright, who has been and currently is an inmate at the Federal Correctional Institution at Fairton ("F.C.I. Fairton"), served as a confidential informant for the DEA and Defendant SCPO throughout the period of time encompassed by this action.  (Compl. ¶ 5.)  As a result of Plaintiff's service, the SCPO was able to build a case against various other persons for dealing in narcotics.  (Id.)  However, according to Mr. Wright's Complaint, the Defendants collectively forced him to cooperate in potentially harmful investigations, abused their discretion in prosecuting those persons whom he had informed against in state court and leaked confidential information about him to the press in an effort to bring him harm.  (Id. ¶¶ 9, 13, 20.)

Mr. Wright makes specific allegations in his Complaint of

3

wrongs performed by the individual defendants against him that have resulted in "extreme mental anguish, distress and mental [fatigue], [u]nnecessary stress and worrying, sleeping disorders, and continuous panic and anxiety." (Id. ¶ 21.)  According to the Complaint, during the course of Plaintiff's period of cooperation as a confidential informant for both the DEA and the SCPO, Defendants Officer Spinelli and Agent Evans forced Mr. Wright to "participate in actions that could bring him great harm even after there were clear signs that investigations were dangerous and nonproductive." (Id. ¶ 13.)  Plaintiff does not specify the manner in which the actions that he was requested to participate in could bring him harm, nor does he point out the specific clear signs that the investigations were dangerous and nonproductive.

Plaintiff further alleges that Agent Evans violated a written Confidential Informant Agreement by forcing him to work with SCPO, failing to monitor the actions of the SCPO in relation to Mr. Wright and allowing the SCPO to exercise jurisdiction over the subjects of Plaintiff's information. (Id. ¶ 4.)

Mr. Wright also alleges that the SCPO, contrary to an oral agreement between all parties, allowed the subjects of Plaintiff's information to be both tried and incarcerated in Salem County, New Jersey, thus exposing Plaintiff to even greater danger of reprisal. (Id. ¶¶ 18-19.)  He further asserts that the SCPO and its employees released confidential information

4

intentionally, and in violation of an oral agreement.  (Id. ¶ 5.)
Specifically, Mr. Wright alleges that the confidential
information was released in the form of articles printed in June
2004 and on October 7, 2004 and August 5, 2005 in the Salem
County Today's Sunbeam newspaper and placed him danger of
reprisal from the very persons upon whom he had informed.  (Id.
¶¶ 7-9, 12.)  Plaintiff does not identify the source of the June
2004 article in his Complaint (Id. ¶ 12.)  However, he
specifically attributes the publication of the October 7, 2004
article to Mr. Lenehan.  (Id. ¶ 7.)  He also specifically
attributes the publication of the August 5, 2005 article to the
SCPO, Mr. Witcher and Officer Spinelli. (Id. ¶ 9)

**B. Procedural History**

This action was originally filed on August 8, 2007 and was
originally assigned to Judge Robert B. Kugler in this vicinage
[Docket Item No. 1].  In addition to the current defendants,
Plaintiff in his original Complaint named the DEA, the Salem
County Today's Sunbeam newspaper and Philip Sean Curran, a
reporter for same, as defendants.  (Compl. ¶ 2.)  These three
defendants were dismissed by Judge Kugler sua sponte on August
28, 2007 [Docket Item No. 2].  Defendant Officer Spinelli
answered Plaintiff's Complaint on January 11, 2008 [Docket Item
No. 14].  The case was then reassigned to the undersigned on
January 28, 2008 [Docket Item No. 23].

5

Defendants SCPO, Mr. Lenehan, Mr. Witcher and Officer Padilla thereafter jointly answered Plaintiff's Complaint [Docket Item No. 26].  In lieu of answering the Complaint, the Federal Defendants filed one of the three motions currently before the Court [Docket Item No. 27]. Defendants SCPO, Mr. Lenehan, Mr. Witcher and Officer Padilla followed suit [Docket Item No. 31]; and Defendant Officer Spinelli filed a similar motion thereafter [Docket Item No. 33].  After Plaintiff was granted the assistance of pro bono counsel by order of this Court, all motions were reopened and are again before the Court [Docket Item No. 49].

As all parties have had opportunity to reply to the motions at issue, the Court will now turn to deciding their merits collectively.

## II.  PRELIMINARY MATTERS

### A.  Motions to Dismiss by the SCPO, Mr. Lenehan, Mr. Witcher, and Officer Spinelli are More Properly Analyzed under Rule 12(c), not Rule 12(b)(6)

Plaintiff argues that the motions to dismiss filed in this case by the Salem County Defendants should be denied as they are untimely under Federal Rule of Civil Procedure 12(b)[Docket Item 52 at 6].[1]  Specifically, Plaintiff argues that, since the

---

[1] Plaintiff includes in this group of defendants: the SCPO, Mr. Lenehan, Mr. Witcher, Officer Padilla, and Officer Spinelli as each filed an Answer to the Complaint through their respective counsel  before filing their motions to dismiss the Complaint [Id. at 5].  The Federal Defendants filed no responsive pleadings prior to their motion to dismiss and thus Plaintiff does not
(continued...)

6

motions by these defendants have been styled as motions to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, they were only properly filed "before filing an answer or other responsive pleading" [Id. at 5].

However, under Rule 12(h)(2): "Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c) [for judgment on the pleadings]." Fed. R. Civ. P. 12(h)(2)(B). As a result of this rule, the courts in this Circuit have construed motions to dismiss under Rule 12(b)(6) filed after the close of pleadings as motions for a judgment on the pleadings under Rule 12(c). See, e.g. Turbe v. Gov't of the V.I., 938 F.2d 427, 428 (3d Cir. 1991); Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan, 439 F. Supp. 2d 337, 341 (D. Del. 2006); Snyder v. Baumecker, 708 F. Supp. 1451, 1462 n.6 (D.N.J. 1989); Angleton v. Pierce, 574 F. Supp. 719, 722 n.1 (D.N.J. 1983); West v. Williamsport Area Comty. Coll., 492 F. Supp. 90, 93 n.3 (M.D. Pa. 1980); Broadcast Employees v. Int'l Bhd of Teamsters, 419 F. Supp. 263, 275 n.15 (E.D. Pa. 1976); cf. Stanley v. St. Croix Basic Serv., Inc., 291 F. Supp. 2d 379, 381 (D.V.I. 2003) (partial motion to dismiss when filed at same time as answer should have been framed as motion under Rule 12(c));

---

[1](...continued)
include their motion in this argument.

7

<u>Penzoil Prods. Co. v. Colelli & Assocs., Inc.</u>, 953 F. Supp. 669, 671 n.1 (W.D. Pa. 1997) (converting a post-answer motion for a preserved Rule 12(b)(2) defense to a motion under Rule 12(c)) <u>rev'd on other grounds</u> 149 F.3d 197 (3d Cir. 1998). Similarly, this Court will thus address the merits the motions by the Salem County Defendants as though they had been submitted as motions under Rule 12(c) instead of under Rule 12(b)(6).

Under Third Circuit precedent, when deciding a motion for judgment on the pleadings under Rule 12(c) which raises the defense that Plaintiff has failed to state a claim upon which relief can be based, the Court should "apply the same standards as under Rule 12(b)(6)." <u>Turbe</u>, 938 F.2d at 428. Thus the motions to dismiss from the Salem County Defendants under Rule 12(c) and the motion from the Federal Defendants under Rule 12(b)(6) will be analyzed by this Court using the same standard of review, that established under Rule 12(b)(6).

**B.   Standard of Review under Rule 12(b)(6)**

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to Plaintiff, and determine whether, under any reasonable reading of the complaint, Plaintiff may be entitled to relief.'" <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008) (quoting <u>Pinker v. Roche Holdings Ltd.</u>,

292 F.3d 361, 374 n.7 (3d Cir. 2002)).

> While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level."

Phillips, 515 F.3d at 234.  "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'"  Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 127 S. Ct. at 1964-65 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> "[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. [Twombly, 127 S. Ct. at 1965 n.3.]  This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  Id.

Phillips, 515 F.3d at 234.  "Generally, in ruling on a motion to dismiss, a district court relies [only] on the complaint, attached exhibits, and matters of public record."  Sands v.

McCormick, 502 F.3d 263, 268 (3d Cir. 2007) (citation omitted).

"Although a district court may not consider matters extraneous to the pleadings, 'a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'" U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002)(quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).

**III. DISCUSSION**

As discussed more fully below, the Court will grant all three of the Defendants' motions in full.  Specifically, the Court will dismiss Plaintiff's constitutional claims as subject to immunity by the defendants.  Also the Court will refuse to take jurisdiction over the pendent state claims presented by Plaintiff in absence of a federal question.

**A.    Dismissal of Defendant Officer Ralph Padilla and Defendant John Doe from Suit**

As noted above, the Supreme Court has required that for a Complaint to survive a motion under Rule 12(b)(6) "'requires a complaint with enough factual matter (taken as true) to suggest' the required element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S. Ct. at 1965 n.3).  At no point in Plaintiff's Complaint does he mention a single act by Officer Ralph Padilla or Mr. Doe that might be the basis for liability.  In fact, the only time that either Officer Padilla's or Mr. Doe's name appears in the Complaint is in the listing of parties at the beginning of

10

the Complaint and then only as an "employee of SCPO"--in the case of Officer Padilla--or as "employee of the Drug Enforcement Agency"--in the case of Mr. Doe.   (Compl. ¶ 2b-c.)

Without any particularized allegations against Officer Padilla or Mr. Doe in the complaint, this Court does not find that Plaintiff has stated any claim against either Defendant and will dismiss both from this case.

**B.   Eleventh Amendment Immunity**

Under the Eleventh Amendment to the U.S. Constitution, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  Unless a state clearly waives this sovereign immunity or the Congress abrogates it, the Eleventh Amendment precludes all claims under 42 U.S.C. § 1983 against a state.  Quern v. Jordan, 440 U.S. 332, 342 (1979). "A suit may be barred 'even though the state is not named a party to the action, as long as the state is the real party in interest.'" Carter v. City of Philadelphia, 181 F.3d 339, 347 (3d Cir. 1999) (quoting Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655, 658 (3d Cir. 1989)).

To determine if the state is the real party in interest, the court must determine whether the individual defendant who is pleading Eleventh Amendment immunity is, in fact, an "arm of the state." Chisolm v. McManimon, 275 F.3d 315, 323 (3d Cir. 2001).

11

The Court "must consider the capacity in which the entity was acting when its actions gave rise to Plaintiff's claim." Id. at 324.  The Third Circuit has identified the "dual or hybrid status" of county prosecutors in New Jersey and noted that "[i]t is well established that when county prosecutors [in New Jersey] execute their sworn duties to enforce the law by making use of all the tools lawfully available to them to combat crime, they act as agents of the State." Coleman v. Kaye, 87 F.3d 1491, 1499 (3d Cir. 1996).  As such, a county prosecutor's office and an individual county prosecutor can claim Eleventh Amendment immunity for decisions made when that prosecutor was executing his sworn duty to enforce the law.  See Davis v. Township of Lakeland, No. Civ.A.03-1025, 2005 WL 1863665, at *3 (D.N.J. Aug. 4, 2005).

        1.   Immunity from "Official Capacity" Suits

     The Eleventh Amendment bars suit of state officials in their official capacity for anything other than injunctive relief unless the state has specifically waived that immunity or Congress has acted to abrogate that immunity under section five of the Fourteenth Amendment.  Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989).  In this case Plaintiff is not suing for injunctive relief but for damages.  Therefore, all claims against the Salem County Defendants in their official capacities in this case are subject to Eleventh Amendment

                                   12

immunity and will be dismissed by the accompanying order.

        2.   <u>Salem County Prosecutor's Office Immunity:</u>
                 <u>Prosecution and Incarceration of "Suppliers"</u>

The Court further applies the Eleventh Amendment principles to the decision by the SCPO to prosecute and incarcerate Plaintiff's "suppliers" in state court instead of in federal court.[2]  As noted above, this decision is considered part of the law enforcement function of the prosecutor's office.  Under New Jersey law, the SCPO acts as an agent of the state government when it performs its law enforcement duties.  <u>Wright v. State</u>, 778 A.2d 443, 462 (N.J. 2001).  The SCPO thus enjoys complete immunity from suit under the Eleventh Amendment for those actions.  Therefore, Plaintiff's claim that the SCPO purposefully prosecuted and incarcerated his three "suppliers" in Salem County courts in violation of his right to due process fails in the face of the SCPO's Eleventh Amendment claim of immunity.

As noted in footnote 2 below, the only other defendant alleged to have had a hand in this decision, the DEA, was already dismissed from this case.  Thus, any portion of Plaintiff's Complaint relating to the decision to prosecute Mr. Wright's suppliers in state court as opposed to federal court and to incarcerate same in the state prison system, will be dismissed

---

[2] Plaintiff actually alleges this count as a conspiracy between the SCPO and the DEA.  However, the DEA was dismissed from this suit as a Defendant by order of Judge Kugler on August 28, 2007 on the grounds that an agency of the United States government is not amenable to suit in a <u>Bivens</u> action [Docket Item No. 2].

for a failure to state a claim upon which relief may be granted. The accompanying order will dismiss Mr. Wright's claims against the SCPO for section 1983 liability in regard to that allegation.

### C. Absolute Prosecutorial Immunity

Defendants SCPO, Mr. Lenehan, and Mr. Witcher also claim absolute immunity from suit under section 1983 for the release of information resulting in the publication of the three articles in the Salem County Today's Sunbeam newspaper. [Docket Item 31 at 11].[3]   The Supreme Court has approved of prosecutorial immunity, but only in relation to those actions "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976).  "More than a mere defense to liability, prosecutorial immunity embodies the 'right not to stand trial.'" Odd v. Malone, 538 F.3d 202, 207 (3d Cir. 2008) (quoting In re Montgomery County, 215 F.3d 367, 373 (3d Cir. 2000)).  Therefore, addressing the concept of absolute prosecutorial immunity is appropriate in a motion under Rule 12(b)(6) or Rule 12(c).  Id.

However, the Supreme Court has been "quite sparing" in permitting a prosecutor to claim absolute immunity from suit under section 1983.  Forrester v. White, 484 U.S. 219, 224

---

[3] Defendant Officer Spinelli appropriately does not claim this immunity in his motion, nor would it be available to him as his role within the Salem County Prosecutor's Office is strictly investigative and not as an advocate.  As a result, this section of the opinion refers only to the immunity claim made by Defendants Salem County Prosecutors Office, Prosecutor John Lenehan, and Assistant Prosecutor Jason Witcher.

(1988).  In this context immunity has been often limited to those functions by a prosecutor "which, because of their similarity to functions that would have been immune when Congress enacted § 1983, deserve absolute protection from damages liability." Buckley v. Fitzsimmons, 509 U.S. 259, 268-69 (1993).

According to the Third Circuit, "A prosecutor bears the 'heavy burden' of establishing entitlement to absolute immunity." Odd, 538 F.3d at 207 (quoting Light v. Haws, 472 F.3d 74, 80-81 (3d Cir. 2007)).  Under Third Circuit precedent, the Court must presume that a qualified immunity analysis is more appropriate unless the defendant can show that "he or she was functioning as the state's advocate when performing the action(s) in question." Id. at 208 (citing Yaris v. County of Delaware, 465 F.3d 129, 136 (3d Cir. 2006)).  As the Supreme Court has noted:

> Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive. Rather, as in Imbler, we inquire whether the prosecutor's actions are closely associated with the judicial process.

Burns v. Reed, 500 U.S. 478, 495 (1991).

The Third Circuit has stated that "prosecutorial immunity analysis focuses on the unique facts of each case and requires a careful dissection of the prosecutor's actions."  Odd, 538 F.3d at 210. The Supreme Court, however, has specifically identified that, "[c]omments to the media have no functional tie to the judicial process just because they are made by a prosecutor."

15

Buckley, 509 U.S. at 277 (denying absolute immunity to a prosecutor for statements made during his press conference).

In light of this standard, the release of information that led to the publication of each of the three articles in the Salem County Today's Sunbeam newspaper and that Plaintiff alleges "exposed Plaintiff's name, location and gave specific details concerning Plaintiff's actions as [a] confidential informant," (Compl. ¶ 8) does not fall within the ambit of law-enforcement duties and is thus not eligible for absolute prosecutorial immunity. Buckley, 509 U.S. at 277-78. As a result, Mr. Lenehan and Mr. Witcher cannot claim absolute prosecutorial immunity in regard to this claim and must rely entirely on the claim of qualified immunity, addressed below.

However, since there is no cognizable claim of respondeat superior under section 1983, Plaintiff's claim against the SCPO will fail--even in the absence of qualified immunity for Mr. Lenehan, Mr. Witcher, and Officer Spinelli--unless Mr. Wright alleges a claim of municipal liability. Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 690-92 (1978). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Id. at 690. The Supreme Court in that case particularly ruled that "a municipality cannot be held liable solely because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. On the face of the complaint,

16

Plaintiff alleges no policy or pattern of action by the SCPO that would have resulted in his injury due to the publication of these three articles.  Instead, he holds the SCPO responsible for the actions of Mr. Lenehan, Mr. Witcher, and Officer Spinelli.  However, the SCPO cannot be held liable for its individual employee's actions under § 1983 and therefore this claim against the SCPO will be dismissed by the accompanying order.  This leaves only Mr. Lenehan, Mr. Witcher and Officer Spinelli responsive to the Plaintiff's claim related to the publication of the three articles in the Salem County Today's Sunbeam newspaper.

D.   **Qualified Immunity**

The Defendants have also moved for dismissal of the Complaint on the basis that Plaintiff has failed to establish a constitutional right violated by the actions of the Defendants.  In particular, Defendants Evans and Spinelli have claimed qualified immunity from suit, a claim that requires this Court to determine if those defendants are alleged to have violated a constitutional right or if the right that they allegedly violated was clearly established at the time of its violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Similarly, Defendants Lenehan and Witcher have moved that Plaintiff has not alleged a violation of an established constitutional right and thus should have his Complaint dismissed as he has shown no violation that would arise under section 1983.

Plaintiff has argued that the actions of the defendants rise

17

to the level of a violation of constitutional rights under the
"state created danger" doctrine [Docket Item 52 at 6].  As set
out more fully below the Court finds that the Plaintiff has not
properly alleged facts that, if proven, would rise to the level
of a violation of his constitutional rights under the state-
created danger doctrine.

Qualified immunity is a threshold issue that could result
in immunity from suit and thus should be considered as early as
possible in the proceedings.  Curly v. Klem, 499 F.3d 199, 208
(3d Cir. 2007).  As an "accommodation of competing values,"
qualified immunity strikes a balance by permitting a plaintiff to
recover for constitutional violations where the defendant officer
was "plainly incompetent or . . . knowingly violate[d] the law,"
while immunizing an officer who "made a reasonable mistake about
the legal constraints on his actions."  Curley, 499 F.3d at 206-
07 (internal quotations and citations omitted).

In Saucier, the Supreme Court described the two-prong
inquiry courts undertake in determining whether a governmental
officer is entitled to qualified immunity.  The Court must
address whether "the officer's conduct violated a constitutional
right" and "whether the right was clearly established."  Id. at
201.  The Supreme Court has clarified that in applying this test
the courts "should be permitted to exercise their sound
discretion in deciding which of the two prongs of the qualified
immunity analysis should be addressed first in light of the
circumstances in the particular case at hand."  Pearson v.

18

<u>Callahan</u> --- U.S. ---, 129 S. Ct. 808, 818 (2009).  This Court
will accept the guidance of the Supreme Court in <u>Pearson</u>;
determining first whether the alleged constitutional right was
clearly established before attempting to find whether the
defendants violated that right.

A right is clearly established when "[t]he contours of the
right [are] sufficiently clear that a reasonable official would
understand that what he is doing violates that right.  This is
not to say that an official action is protected by qualified
immunity unless the very action in question has previously been
held unlawful, but it is to say that in the light of pre-existing
law the unlawfulness must be apparent."  <u>Anderson v. Creighton</u>,
483 U.S. 635, 640 (1987).  "This inquiry turns on the 'objective
legal reasonableness of the action, assessed in light of the
legal rules that were clearly established at the time it was
taken.'"  <u>Pearson</u>, 129 S. Ct. at 822 (quoting <u>Wilson v. Layne</u>,
526 U.S. 603, 614 (1999)).

As noted by the Third Circuit, "the Due Process Clauses
generally confer no affirmative right to governmental aid, even
where such aid may be necessary to secure life, liberty, or
property interests of which the government itself may not deprive
the individual."  <u>Bright v. Westmoreland County</u> 443 F.3d 276, 280
(3d Cir. 2006) (citing <u>DeShaney v. Winebago County Soc. Servs.
Dept.</u>, 489 U.S. 189, 195-96 (1989)).  However, a "constitutional
violation can occur when state authority is affirmatively

19

employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in the absence of state intervention.'" Id. at 281 (quoting Schieber v. City of Philadelphia, 320 F.3d 409, 416 (3d Cir. 2003)).  This doctrine, known as the "state created danger" doctrine, has been approved by the Third Circuit as a "mechanism for establishing a constitutional claim pursuant to 42 U.S.C. § 1983."  Kneipp v. Tedder, 95 F.3d 1199, 1205 (3d Cir. 1996).

The Third Circuit has recognized that "Bivens actions are simply the federal counterpart to § 1983 claims brought against state officials" and thus the analysis established under one type of claim is applicable under the other. Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004) (citing Brown v. Philip Morris, Inc., 250 F.3d 789, 800 (3d Cir. 2001)).  By the reasoning of Egervary, the "state created danger" analysis will apply equally to a Bivens claim.

The Third Circuit has established a test with four essential elements to be proven under the "state created danger" doctrine:

> (1) "the harm ultimately caused was foreseeable and direct";
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and Plaintiff existed such that "Plaintiff was a foreseeable victim of the defendant's acts," or a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that

20

> rendered the citizen more vulnerable to danger than had
> the state not acted at all.

Bright, 443 F.3d at 281 (quoting Kneipp, 95 F.3d at 1208, 1209
n.22; Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 913
(3d Cir. 1997)) (internal footnotes ommitted).

Plaintiff identifies two affirmative actions taken by
Defendants that placed him in a more dangerous position than he
would have otherwise been in: (1) the release of Mr. Wright's
identity which resulted in the publication of that information in
an newspaper articles and which Plaintiff attributes to Mr.
Lenehan, Mr. Witcher and Officer Spinelli (Compl. ¶ 9); and (2)
the alleged forced cooperation by Mr. Wright in dangerous SCPO
investigations, which he attributes to Agent Evans and Officer
Spinelli (Id. ¶ 13).

Addressing the actions of these defendants in turn, this
Court finds, for the reasons now explained, that neither right
was clearly established and therefore that no liability under
either section 1983 or Bivens may lie with any of the three
remaining defendants.

1.   Release of Plaintiff's Identity by Defendants
     Prosecutor John Lenehan, Special Officer Edmund
     Spinelli and Assistant Prosecutor Jason Witcher

Plaintiff alleges that Mr. Lenehan was responsible, along
with Officer Spinelli and Mr. Witcher, for the release of
Plaintiff's identity to a reporter from the Salem County Today's
Sunbeam newspaper.  However, in making that allegation, Mr.

Wright does not allege any injury that can or should be redressed under section 1983.

The defendants have argued that physical harm is required for a finding of "state-created danger" under section 1983 and noted that Plaintiff has not pointed to any case that establishes mental anguish as a harm provided for under the doctrine.  This Court agrees that a successful claim in the Third Circuit under "state-created danger" test will allege a harm to the plaintiff that was truly compelling or appalling enough to shock the conscience.  See, e.g. Rivas v. City of Passaic, 365 F.3d 181, 184 (3d Cir. 2004) (death of plaintiff in action brought by his estate and family); Scheiber v. City of Philadelphia, 320 F.3d 409 (3d Cir. 2003)(death of assault victim when police allegedly failed to investigate commotion in her apartment); Kneipp v. Tedder, 95 F.3d 1199, 1203 (3d Cir. 1996) (plaintiff suffered severe brain damage).

In fact, the only case that this Court has discovered that might address whether the release of a confidential informant's identity without any resulting injury might meet the "state-created danger" threshold comes from the Sixth Circuit. Kallstrom v. City of Columbus, 136 F.3d 1055 (6th Cir. 1998).  In that case the City of Columbus released the confidential personnel files of three undercover police officers to the defense attorney representing persons who had been arrested as a

22

result of the undercover officers' efforts.  Id. at 1059.  Those files contained the names, addresses and phone numbers of the officers' immediate family.  Id.  The defense attorney reportedly shared the files with his clients, known violent drug offenders who were in prison as a result of the efforts of these particular officers.  Id.  The Sixth Circuit there indicated that the city's distribution of personal information about its own officers may have violated the officers' right to personal security and bodily integrity and thus may open the city to liability under section 1983.  Id. at 1064.

Notably, eight months after the Kallstrom decision, the Sixth Circuit itself refused to apply that precedent in a claim by a confidential informant whose location was discovered by those upon whom he had informed.  Summar ex rel. Summar v. Bennett, 157 F.3d 1054, 1059 n.2 (6th Cir. 1998) ("Summar's voluntary decision to become a confidential informant with all the dangers it presented, not to mention his poor decision to fraternize with criminals in the first place, played a much greater role in his unfortunate demise [than did the release of information by the police officer to the district attorney].")

In this case the Plaintiff has not alleged any injury to his person nor even a directed release of information to those who could harm him.  In fact, he has alleged no release of any information by any of the Defendants other than his name and his

23

role as a confidential informant to the general public through three newspaper articles.  While releasing the name of a confidential informant to the media may or may not eliminate the usefulness of that informant in the future, it does not appear to rise to the level of a state-created danger absent some injury to the informant.  This is particularly so when the informant is a cooperating witness whose cooperation is based on a plea agreement.  Such a cooperator's name and role are routinely made public and is sometimes required by the Constitution if the cooperator is called as a witness at the trial or when the cooperator seeks a more favorable sentence or a reduction in sentence.  See, Roviaro v. United States, 353 U.S. 53, 59-61 (1957) (ruling that the privilege of disclosure of a confidential informant's identity rests with the government and is limited by the "fundamental requirements of fairness").  It is arguable that, after Roviaro, a confidential informant does not hold any privilege against the disclosure of his identity by law enforcement.  As has been noted by the Defendants, Plaintiff's name was released in such a manner to the general public when he received a downward departure from the recommended guidelines sentence at the motion of the government in his sentencing hearing before this Court.

It suffices to say that Plaintiff's claimed constitutional right to non-disclosure of his confidential informant status is

24

not "clearly established" and Defendants are entitled to
qualified immunity.  Therefore, while the release of Plaintiff's
name and role to the media might not reflect the most judicious
use of a confidential informant, this Court--absent some
definable injury to the person of Plaintiff--cannot find that
release violates a clearly established constitutional right.  In
fact, no precedent suggests such a constitutional right.  As a
result, in regard to the three articles in the Salem County
Today's Sunbeam newspaper, Mr. Lenehan, Mr. Witcher, and Officer
Spinelli all enjoy qualified immunity from suit.  The Court will
therefore dismiss the Plaintiff's constitutional claims in regard
to those three newspaper articles.

> 2.   <u>Alleged Forcible Cooperation in Dangerous
>       Investigations by Defendants Agent Calvin Evans
>       and Special Officer Edmund Spinelli</u>

Plaintiff further alleges that Defendants Special Officer
Spinelli and Agent Evans "continued to have plaintiff participate
in actions that could bring him great harm even after there were
clear signs that investigations were dangerous or nonproductive."
(Compl. ¶ 13).  However, similar to the analysis for the release
of confidential information above, this Court can find no
precedent that allows a plaintiff to recover in a <u>Bivens</u> or
section 1983 action on these facts absent some injury to the
plaintiff.  Again the closest available precedent is <u>Kallstrom</u>
and again, the decision in <u>Summar</u> makes that precedent apparently

inapplicable to a case involving a voluntary confidential informant.  <u>Summar</u>, 157 F.3d at 1059 n.2.

This result is particularly true in the instant case as Plaintiff received the benefit of a motion by the government to recognize his cooperation in investigations through a recommendation for a decreased sentence pursuant to section 5K1.1 of the Federal Sentencing Guidelines.[4]  U.S. Sentencing Guidelines Manual § 5K1.1.  Plaintiff cannot reap the benefits of his voluntary cooperation with authorities only to turn around and claim monetary damages for the stresses and strains of the very same cooperation by claiming a deprivation of substantive due process.  No such right exists or is foreshadowed by clear precedent.

Therefore, in the absence of any authority--either brought to the Court's attention by Plaintiff or through the Court's own research--that might tend to show that a plaintiff without injury to person can recover under <u>Bivens</u> or section 1983 for participating in investigations that he later claims were too risky, but where he has suffered no injury, this Court finds that neither Agent Evans nor Officer Spinelli violated a clearly

---

[4] This Court takes judicial notice of its own docket in <u>United States v. Wright</u>, 04-cr-00897 (JBS), reflecting that the Government's motion for downward departure due to Mr. Wright's cooperation under U.S.S.G. § 5K1.1 was granted and Wright received a substantial reduction on January 13, 2007.  <u>Id.</u> (Docket Items 10 & 11.)

established constitutional right of Mr. Wright.  That Mr. Wright
may have felt compelled to endure risky cooperation in hopes of
gaining a sentencing benefit, hardly can be said to shock the
judicial conscience.  As a result, both Defendants Spinelli and
Evans are entitled to  qualified immunity from suit in regard to
Plaintiff's participation in investigations and the Court will
dismiss the Plaintiff's claims in regard to that allegation.

     In summary, Defendants Evans, Lenehan, Witcher and Spinelli
are all entitled to qualified immunity upon all claims herein
arising under the Constitution, whether under 42 U.S.C. § 1983 or
under <u>Bivens</u>, because, even if Plaintiff's factual allegations
are true, such conduct did not violate any clearly established
constitutional right.

**E.   Plaintiff's Contract Claims Against Agent Evans**

     Under Third Circuit precedent, "[p]lea agreements are
contractual and therefore are to be analyzed under contract law
standards." <u>United States v. Gilchrist</u>, 130 F.3d 1131, 1134 (3d
Cir. 1997).  However, no claim for breach of contract is
cognizable against Agent Evans in this case.  The plea agreement
entered into by the Plaintiff and the United States Attorney's
Office on July 9, 2004 specifically states that, "this agreement
constitutes the full and complete agreement . . . and supersedes
any previous agreement . . . .  No additional promises,
agreement, or conditions have been entered into other than those

27

set forth in this letter, and none will be entered into unless in writing and signed by the parties." [Docket Item 31, Attach. 1 at 5] The agreement further states that "[t]his agreement is limited to the United States Attorney's Office for the District of New Jersey and cannot bind other federal, state, or local prosecuting authorities." [Id. at 4]  Plaintiff alleges that Agent Evans violated this agreement, however as clearly noted by the terms of the agreement itself, he was not a party to the agreement and thus could not violate it.

Even if Agent Evans could be determined to be a party to the agreement, however, the United States Court of Appeals for the Federal Circuit, the intermediate appellate court of controlling precedent on matters of contract with the United States, has ruled that agreements made by the United States will not provide implied monetary liability for breach, and will only provide such liability "if there was an unmistakable promise to subject the United States to monetary liability."  Sanders v. United States, 252 F.3d 1329, 1336 (Fed. Cir. 2001).  Such an agreement would "require the same kind of express language (in both written and oral agreements) required by the unmistakability doctrine concerning government liability for the exercise of sovereign power."  Id.

At no point in the plea agreement, upon which Plaintiff bases his claim, does the United States Attorney's Office ever

subject itself, the DEA, Agent Evans, or the United States government to monetary liability for a breach of that agreement. [Docket Item 31, Attach. 1]  Additionally, the agreement specifically supersedes any and all agreements made previously between the United States and the Plaintiff and establishes that any further agreements will be made in writing and signed.  As this is the agreement that the Plaintiff relies upon in his complaint without any statement in the agreement opening the United States or its agents to monetary liability, this Court will not allow the common law breach of contract claim to continue against Agent Evans.

## IV. CONCLUSION

The Court thus finds that all of the constitutional claims alleged by Plaintiff in his Complaint are subject to either absolute or qualified immunity and will be thus dismissed with prejudice in the accompanying order.  The court will also dismiss with prejudice the federal common law breach of contract claims against Agent Evans in the accompanying order.

As a result, Plaintiff's Complaint no longer has a federal question upon which the jurisdiction of this court can be invoked.  Therefore the Court will also dismiss without prejudice all pendent state claims against the Salem County Defendants, both in contract and in tort, for lack of jurisdiction, pursuant to 28 U.S.C. § 1367(c)(3); see United Mine Workers of Am. v.

Gibbs, 383 U.S. 715, 726 (1966) ("if federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").  The dismissal of the state claims against the Salem County Defendants does not address the merits, if any, of these state claims in contract or in tort, so this dismissal is without prejudice to Plaintiff's opportunity to file such a claim in a state court of competent jurisdiction.

For the reasons discussed above, the Court will grant the defendants' motions in full and dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted.  The accompanying Order will be entered.


**March 24, 2009**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      United States District Judge

30